### BENJAMIN D'ARCY v. WILLIAM J. MARTYN.

*Landlord and tenant—Construction of contract—Notice to quit —Option to tenant.*

1. Plaintiff sold defendant a stock of goods in his store, and agreed to let defendant occupy the store until a brick one, then in process of erection, was "in proper shape for business," for the sum of fifty dollars, payable at a future *fixed* date.

   *Held*, that defendant was entitled to occupy the *old* store for the fifty dollars until the *new* one was completed and "in proper shape for business," and that this question of completion was for the jury to decide.

2. A notice to quit can hardly be considered valid which gives the tenant an option of remaining in possession upon payment of a specified *increased* rent.

Error to Tuscola. (Beach, J.) Argued November 4, 1886. Decided November 11, 1886.

Summary proceeding to recover possession of leased premises. Defendant brings error. Reversed. The facts are stated in the opinion.

*Black, Gray & Corcoran,* for appellant.

*Huston & Sutton* and *T. J. Eveland,* for plaintiff.

MORSE, J. This is a summary proceeding, brought to recover possession of a building occupied as a drug-store, in the village of Mayville, in the county of Tuscola. Defendant had judgment before a circuit court commissioner, but, on appeal to the circuit, the judge thereof directed a verdict for the plaintiff.

The construction of a contract or lease is the principal subject-matter of the contest.

July 17, 1884, the plaintiff, who was the owner of the store, sold the stock therein to the defendant, and at the same time, as plaintiff claims, verbally rented the store to him at the rate of $100 per year, "as long as he kept it."

The defendant denies any verbal agreement to pay rent other than the one shown in the written contract.

Defendant took possession of the building about the twenty-first of July, 1884.

The plaintiff at that time was building a new store, which is designated in the record as the "Corner Store." There was more or less talk about the completion of this corner store that fall, and the defendant renting it when finished.

August 12, 1884, the defendant wrote out the following contract, which was executed by the parties:

"Article of agreement, made this twelfth day of August,

in the year of our Lord 1884, between Benjamin D'Arcy, of the State of Michigan, county of Tuscola, village of Mayville, physician and druggist, and William John Martyn, of the province of Ontario, county of Lambton, township of Bosanquit, farmer, by which the said Benjamin D'Arcy assigns to the said John Martyn the stock of drugs, fancy goods, tobacco, cigars, patent medicines, safe, show-cases, liquors, oils, and all other articles contained in said store, clear of all incumbrance, for which the said John Martyn agrees to pay the said Benjamin D'Arcy the sum of twelve hundred and twenty-two dollars, six hundred and twenty-two dollars of which is to be paid in cash, and the other six hundred by the discharge of mortgage on farm; and the said John Martyn agrees to pay the heirs of the late Melvin H. Martin, partner of Benjamin D'Arcy in the drug business at Mayville, their share of the business; and the said Benjamin D'Arcy agrees to pay all the debts contracted by the firm of D'Arcy & Co.; also the said Benjamin D'Arcy agrees to let the said John Martyn have possession of the building in which this business is kept till the brick store on the corner is in proper shape for business, for the sum of fifty dollars, payable on the first day of January, 1885.

"Signed in the presence of      " Wm. J. Martyn.
"R. A. Smith."      " Benjamin D'Arcy.

The defendant claimed, upon the trial, that by virtue of the contract he was entitled to the possession and use of the old store until the brick or corner store was in a proper shape for business, for no more rent than the $50 mentioned in the agreement, without reference to the time of occupancy; and offered evidence to show that at no time, up to the day of the trial, had the corner store been completed fit for occupancy, or in a proper shape for business, and further claiming that, by reason of the failure of plaintiff to so complete said new store, his tenancy of the old building had not yet expired. The court rejected the offered testimony, which ruling is assigned as error.

The plaintiff claimed, and was allowed to give in evidence, that before and at the time the agreement was executed the understanding between him and the defendant was that he

should have $100 per year for the old store, but that both parties expected the new store would be completed that fall; that defendant said to him:

"If you will rush on that building on the corner, so that I can get into it in three or four months, I will give you fifty dollars." "We talked that he was to have the store at the rate of $100 per year. Then Mr. Martyn says to me, 'If you can get the building completed in three or four months, I will give you fifty dollars.' That was in August, and he meant three or four months from that time."

This testimony was objected to as incompetent, its tendency being to contradict the written contract. Defendant's counsel also moved to strike out the testimony for the same reason, which motion was denied.

Plaintiff notified defendant in writing, of date June 18, 1885, that he would have the new store building ready for him about the first of July, and wanted him to then give up the old store.

January 9, 1886, one Eveland, acting for plaintiff, wrote defendant that he must pay the rent due, which he claimed was for five months, at $10 per month, or else an action would be commenced to recover possession of the old store. The plaintiff also testified that he notified defendant in August, 1885, to quit, which notice was introduced in evidence, and reads as follows:

"To William J. Martyn, Mayville, Mich.:

"SIR:—Being in possession of a certain store situate in the village of Mayville, Mich., on the west side of Fulton street, in said village, and known as the 'D'Arcy Drug Store,' which said store was leased to you by me, and said lease having expired, and being fully ended and completed, I hereby notify you that it is my desire to have again and repossess the said store now occupied by you. I therefore do hereby require you to leave the same at once, and surrender the possession to me. Upon a failure to restore or surrender the possession of the premises as above requested, you will be required to pay a monthly rent of fifteen dollars per month.

"Given under my hand this twelfth day of August, 1885.

"BENJAMIN D'ARCY."

That he had different conversations, in which he told defendant that the new store was ready, and he wanted the old store. Told him so in June, 1885. Defendant at that time said, "You cannot compel me to go into the other store." Plaintiff replied, "I am aware of that, but I can compel you to pay rent;" and defendant, in answer, said, "You can't until that sidewalk is built, and that pile of bricks is out of the way," referring to the condition of things in front of the new store.

We think the court below erred, and that the defendant's construction of the contract is the true one. No matter if the understanding was, at the time of the execution of the contract, that the plaintiff would have the corner store ready for business that fall, or in three or four months, there was certainly no definite time fixed; and the parties saw fit, by their agreement in writing, to fix such time as defendant should occupy the old store for $50 to be when the brick store on the corner should be "in proper shape for business."

If the plaintiff wished the defendant's term to end that fall, or in three or four months, it was his duty to put the new store in shape for occupancy. He alone was in fault that the tenancy continued. It is evident also, by his notices, that he understood the agreement as the defendant did. He asks no rent above the $50 until July 1, 1885, nearly a year after the agreement, when he claims his store is ready. In his notice to quit of August 12, 1885, he claims no additional rent, but simply that the tenancy has expired; and his agent, Eveland, in his letter of January 9, 1886, only claims five months' rent, being from August, 1885, to that date.

As the case stood, if the plaintiff could show to the satisfaction of the jury that the new store was "in proper shape for business" at any date after the agreement of August 12, 1884, and a proper notice to quit thereafter, he was entitled to recover the possession of the premises. If the new store

was not, and never had been, at the time of the commencement of this suit, completed, so as to be fit for business therein, the tenancy of defendant had not ended, and the verdict should have been for the defendant. This was the question for the jury to determine, and the defendant should have been permitted to introduce testimony to sustain his claim upon this point.

The notice to quit of August 12, 1885, must be deemed a waiver of the notice of June 18, and that notice can hardly be considered a valid notice upon which to base this action, as it manifestly gave the defendant an option of remaining in the store upon payment of rent at the rate of $15 per month; and the lapse of time after such notice seems to have created a new tenancy.

Whether the notice contained in the letter of Eveland, of date January 9, 1886, is a good one, depends upon the facts to be found by a jury. If the new or corner store was completed and ready for occupancy at the date of the August notice, the retention of the building might be considered as an implied agreement upon the part of the defendant to pay rent thereafter at the rate of $15 monthly, and a failure to pay the same upon demand, for seven days after such demand, would entitle plaintiff to bring this action, which was commenced January 23, 1886.

The judgment of the circuit court is reversed, with costs, and a new trial granted.

The other Justices concurred.